CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
December 08, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| Calvin Cohill Dean, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Christian Brooke Dean, ) <br> ) <br> Defendant. ) <br> ) <br> ) | Civil Action No. 3:25-cv-00095 |

## MEMORANDUM OPINION

This matter is before the court on Plaintiff Calvin Cohill Dean's emergency motion for a temporary restraining order ("TRO") and preliminary injunction. (Emergency Mot. for TRO and Prelim. Inj. (Dkt. 3) [hereinafter "TRO Mot."].) Plaintiff Calvin Cohill Dean and Defendant Christian Brooke Dean are both party to pending Virginia state court and Nevada state court proceedings regarding their marriage status and property division. (*Id.* at 2–3.) Plaintiff requests a stay and injunction preventing "Defendants[] and all persons acting in concert with them" from selling Plaintiff's house at public auction, a stay and injunction of two relevant proceedings between the same parties in Virginia Civil Court, and an injunction preventing Defendant from dissipating or transferring property in dispute. (*Id.* at 1, 4.) For the following reasons, the court will deny Plaintiff's motion and dismiss the complaint for lack of subject matter jurisdiction.

I.     Background

Plaintiff and Defendant were married in August 2005 in Las Vegas, Nevada. (Compl. ¶ 7 (Dkt. 1).) Both Plaintiff and Defendant currently reside in the Commonwealth of Virginia. (*Id.* ¶¶ 5–6.) On February 9, 2022, Defendant filed a divorce complaint against Plaintiff in the Circuit Court for the County of Albemarle, Virginia. (Def.'s Resp. in Opp. to Pl.'s TRO Mot. at 1 (Dkt. 6) [hereinafter "Def.'s Resp. Br."]) After several years of state court proceedings, the court entered a "Final Decree of Divorce" on October 18, 2024, which dissolved the parties' marriage. (*Id.* at 2.) Plaintiff later raised issues about the validity of parties' 2005 marriage to the court. (*Id.*) Following an evidentiary hearing, on January 8, 2025, the Virginia court ruled that the 2005 marriage was void because Defendant was still married to Oscar McCauley when she married Plaintiff. (*Id.*; TRO Mot. at 2; Dkt. 3-7 at 10.) The court ordered "no spousal support" and "no further equitable distribution" given that the marriage was invalid. (Dkt. 3-7 at 10.)

However, on Defendant's motion for reconsideration, the Virginia court reversed its January ruling on March 20, 2025. (*See* Dkt. 3-2 at 1–2.) It found that Defendant's marriage to McCauley was itself void because McCauley was already married at the time. (*Id.*) Accordingly, the court held that Plaintiff and Defendant's marriage was in fact valid under Virginia law. (*Id.* at 2.) Plaintiff was required to "begin paying the $3000.00 a month as previously ordered." (*Id.*)

On September 9, 2025, Plaintiff filed a petition in Nevada seeking to annul Plaintiff and Defendant's 2005 Nevada marriage. (Def.'s Resp. Br. at 2; TRO Mot. at 3.) The Nevada court issued an ex parte preliminary injunction prohibiting either party from transferring,

concealing, destroying, or disposing of property during the Nevada annulment action. (Def.'s Resp. Br. at 2; Compl. ¶ 1.) Defendant filed a motion to dismiss the Nevada complaint, and a hearing is scheduled in the Nevada court on December 10 regarding this motion. (Def.'s Resp. Br. at 2.)

On October 1, 2025, the Virginia court "ordered [Mr. Dean] to pay $48,500.00 to [Ms. Dean's] Counsel by October 3." (Dkt. 3-3 at 1; *see* Dkt. 3-4 at 10.) When Plaintiff "failed to pay the amounts ordered by the Court's deadline," the Virginia court ordered sale of Plaintiff's house at public auction "within ninety (90) days of October 1, 2025," or by December 30, 2025. (Dkt. 3-3 at 1–3.) Additionally, on October 20, the Virginia court refused to be bound by the Nevada preliminary injunction. (Dkt. 3-5 at 2.) The Virginia court explained that since the Nevada order was not final, full faith and credit is not warranted. (*Id.*) Furthermore, the Virginia court explained that being bound by the Nevada order "would be against public policy." (*Id.*)

On November 18, 2025, Plaintiff filed a complaint in this court, alleging that a conflict exists between Plaintiff's obligations under the recent Nevada state court preliminary injunction and the Virginia state court's various orders and rulings. (Compl. ¶¶ 27–31.) In his complaint, Plaintiff seeks "prospective injunctive relief to preserve the status quo and prevent irreparable harm without challenging the validity of any state ruling." (*Id.* ¶ 30.) Plaintiff also asks for "a declaratory judgment that, during the pendency of the Nevada

annulment action, the Nevada injunction governs the parties' obligations regarding transfer, concealment, destruction, or disposition of property." (*Id.*)

Plaintiff filed his motion for a TRO and preliminary injunction the following day, seeking injunctive relief preventing the sale of the disputed house, prohibiting the transfer or dissipation of marital property, and staying the relevant proceedings currently pending in Virginia state court, Case Nos. CL22-160 and CL22-160-01. (TRO Mot. at 1, 4.) Plaintiff also requested an "expedited hearing on Plaintiff's request for a preliminary injunction." (*Id.* at 1.) However, the court determined that a hearing is not necessary and will resolve the motion on the parties' briefs.

Plaintiff's claims were brought under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–02, alleging "violations of the Full Faith and Credit Clause and the Fourteenth Amendment's Due Process Clause arising from the enforcement of certain orders of a Virginia Circuit Court entered on October 1, 20, and 25, 2025." (*Id.* at 3.) Defendant filed a response brief on November 25, 2025, (Def.'s Resp. Br.), in accordance with the court's order setting a briefing schedule, (Dkt. 4). Defendant argues that the federal court should both deny the motion and dismiss the complaint because (1) the court lacks subject matter jurisdiction, (2) abstention doctrines require dismissal, (3) the Anti-Injunction Act, 28 U.S.C. § 2283, bars Plaintiff's requested relief, (4) Plaintiff fails to state a claim upon which relief can be granted, and (5) Plaintiff fails to meet the requirements for granting a TRO or preliminary injunction. (*Id.* at 1–5.) The Defendant's brief also moves to dismiss Plaintiff's complaint pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*Id.* at 1, 3–4.) Plaintiff replied in support of his TRO and in opposition to the motion to dismiss. (Dkt. 10.)

## II.     Standard of Review

Federal courts are courts of limited jurisdiction, which means they are "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). A federal court must dismiss an action "[i]f the court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3); *see Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). "Determining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure." *Lovern*, 190 F.3d at 654. The plaintiff has the burden of showing that jurisdiction exists. *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988).

A TRO or preliminary injunction "is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). To obtain such an injunction, a plaintiff must demonstrate (1) by a "clear showing" that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm without preliminary relief; (3) that the balance of equities tips in his favor; and (4) that a preliminary injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Di Biase*, 872 F.3d at 230. These injunctions should be granted "only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245

F.3d 335, 339 (4th Cir. 2001) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)).

### III.    Analysis

Upon reviewing Plaintiff's complaint and TRO motion, the court concludes that it lacks subject matter jurisdiction to hear Plaintiff's claims for injunctive and declaratory relief. Therefore, the court will deny Plaintiff's motion for TRO and preliminary injunction and will dismiss Plaintiff's complaint for lack of subject matter jurisdiction.

#### A. *Rooker-Feldman* **Doctrine**

Under the *Rooker-Feldman* doctrine, a federal district court generally does not have subject matter jurisdiction to review state-court decisions. *See Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997); *Adkins v. Rumsfeld*, 464 F.3d 456, 463–64 (4th Cir. 2006). Specifically, the doctrine prohibits federal district courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *T.M. v. Univ. of Md. Med. Sys. Corp.*, 139 F.4th 344, 349 (4th Cir. 2025) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). In other words, parties may not seek "what in substance would be appellate review of the state judgment in a United States district court." *American Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)). This doctrine applies to both final and interlocutory orders issued by state courts. *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 199 (4th Cir. 2000). Given the jurisdictional nature of the *Rooker-Feldman* doctrine, courts "are

obliged to address it before proceeding" to the merits of a given case. *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002).

The *Rooker-Feldman* doctrine applies "not only to issues actually decided by a state court but also to those that are inextricably intertwined with questions ruled upon by a state court." *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 857–58 (4th Cir. 2001) (internal quotation marks omitted). "A federal claim is 'inextricably intertwined' with a state court decision if success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." *Id.* at 858. In other words, federal courts shall not hear claims where, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual." *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (cleaned up).

Plaintiff's requests are exactly what the *Rooker-Feldman* doctrine prohibits this court from considering. In his TRO motion, Plaintiff asks the court to: (1) "[s]tay and enjoin all further proceedings in *Dean v. Dean*, Case Nos. CL22-160 *and* CL22-160-01 pending in a Virginia Civil court"; (2) "[e]njoin Defendant from selling, transferring, concealing, destroying, or otherwise dissipating property removed from the marital property or otherwise in dispute"; and (3) "[p]reserve the remaining disputed funds by directing that no additional transfers be made until this Court has resolved the issues presented." (TRO Mot. at 1.) This requested relief would require this court to take action rendering several Virginia state court orders ineffectual. Namely, Plaintiff's request for this court to "direct[] that no additional transfers be made" and enjoin "Defendants, and all persons acting in concert with them," from selling

the Scottsville Road residence, (TRO Mot. at 1, 4), would overturn the state court's October 20 order, (Dkt. 3-4), requiring "the marital residence [to] be sold at public auction" "unless Mr. Dean pays the moneys owed of $48,500 no later than Friday, October 3," (*id.* at 10). Furthermore, in his complaint, Plaintiff asks the court to rule that the Nevada injunction governs the parties' obligations regarding transfer and disposition of property during the pendency of the Nevada action. (Compl. ¶ 31.) This would effectively nullify the contrary decision of the Virginia court when it "declin[ed] to be bound by the Nevada [preliminary injunction] order enjoining the parties . . . from certain action" due to the lack of a Nevada final order and for public policy reasons. (Dkt. 3-5 at 2.)

Plaintiff's own arguments reveal how his claims are inextricably intertwined with Virginia and Nevada state court decisions. His argument for "likelihood of success on the merits" in his TRO motion centers on which state's law governs the validity of the Nevada marriage—the main dispute in the Virginia court's divorce and equitable distribution proceedings—and how the Virginia court did not correctly consider Nevada-law issues at an April 17 hearing. (Dkt. 3-1 at 3–4.) Plaintiff asserts that he "does not seek review, reversal, or modification of any state-court ruling." (Compl. ¶ 2; *see also* Dkt. 10 at 1–2.). But he does. In fact, his assertion is directly contradicted by the reasoning he proffers in his TRO briefs and the very nature of the relief he seeks. Further, his argument that *Rooker-Feldman* does not apply because the dispute is about interlocutory orders rather than final orders is plainly incorrect. *See Brown & Root, Inc.*, 211 F.3d at 199 ("*Rooker-Feldman* also applies to interlocutory orders issued by state courts.").

Granting the requested injunctive and declaratory relief in the TRO and complaint would run afoul of the *Rooker-Feldman* doctrine. If Plaintiff wishes to challenge either the Nevada or Virginia court's rulings, he must seek relief in the appropriate state court, not in federal court.

### B. Anti-Injunction Act

Moreover, the Anti-Injunction Act expressly prohibits federal courts from "grant[ing] an injunction to stay proceedings in a State court" except as "expressly authorized" by federal statute and other narrow exceptions. 28 U.S.C. § 2283. Plaintiff argues that this case falls within the "expressly authorized" exception set forth in *Mitchum v. Foster*, 407 U.S. 225, 226 (1972), for injunctions issued pursuant to 42 U.S.C. § 1983. (Dkt. 10 at 5.) However, Plaintiff does not bring this case against a state actor, nor does he allege that Defendant's actions were made "under color of state law," as required to state a claim under § 1983. *See* 42 U.S.C. § 1983; *Rendell-Baker v. Kohn*, 457 U.S. 830, 835 (1982) ("A claim may be brought under § 1983 only if the defendant acted 'under color' of state law."). Thus, the exception set forth in *Mitchum v. Foster* does not apply.

Accordingly, to the extent that Plaintiff asks the court to "[s]tay and enjoin all further proceedings in *Dean v. Dean*, Case Nos. CL22-160 and CL22-160-01 pending in [] Virginia Civil court," (TRO Mot. at 1), or to interfere in any other way with pending state court proceedings, the Anti-Injunction Act directly prohibits such relief.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for temporary restraining order and preliminary injunction, (Dkt. 3), will be **DENIED**. Plaintiff's complaint, (Dkt. 1), will be

**DISMISSED** without prejudice for lack of subject matter jurisdiction pursuant to Rule 12(h)(3).

An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this __8th__ day of December, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE